ASSOCIATION OF LAW ENFORCE-
MENT OFFICERS OF
DeKALB, INC.

v.

Dick HAND, individually and in his
capacity of Director of Public
Safety; et al.

Matthew Link, Jerry McCumber and
DeKalb Lodge # 10, Fraternal
Order of Police, Intervenors.

Civ.A.No. C79–2313A.

United States District Court,
N. D. Georgia,
Atlanta Division.

July 23, 1981.

On Objections To Proposed Implementa-
tion of Preferential Promotions
Sept. 24, 1981.

Sampson Oliver, Jr., Brian Spears, Atlanta, Ga., for plaintiff.

Jerry D. McCumber, Thomas O. Duvall, Jr., Decatur, Ga., for intervenors.

Alan R. Turem and Andrew R. Kirschner, Atlanta, Ga., for Jarvis and Brown.

Scott R. Owens, Robert H. Walling, and Alexander E. Wilson, III, Atlanta, Ga., for Hand, Burgess, Russell, Levetan, Patterson, Manning, Lanier, Moon and Higdon.

Barbara A. Harris, Ass't. U.S. Atty., Atlanta, Ga., for Miller.

George P. Dillard, Decatur, Ga., for DeKalb County.

### ORDER

NEWELL EDENFIELD, District Judge.

This action is before the court on intervenors' motion seeking clarification of certain provisions of the consent decree entered into on September 11, 1980 by plaintiff, DeKalb County, the DeKalb County Police Department, and intervenors representing the Fraternal Order of Police.

Intervenors ask the court to rule on the effect of the following underlined passage:

### XVII.

The matrix schedule which is attached as Exhibit "B" establishes goals for the filling of entry level and promotional vacancies through hiring and promotion through 1986 and is made a part of this Consent Decree. Nothing contained herein, however, shall require that any promotion or position shall be filled by selecting a non-qualified person. It is agreed that the next two highest ranked black officers on the current Sergeant promotion register shall be included in the seventeen promotions to the position of Sergeant presently pending. *Additionally, with respect to future vacancies in Sergeant positions filled from the current register, the first and eighth of such vacancies shall be filled by a black person.* . . .

In seeking clarification of that provision, intervenors urge the court to rule that it requires that the County give only the first and eighth promotion from the current register to a black officer, which the DeKalb County Police Department has already done. Intervenors acknowledge that the interpretation they seek leaves the decree without any preferential promotion mechanism to effectuate the matrix appended to it. Intervenors propose, however, that a preferential promotion formula be implemented that would promote the black officer standing highest on the then-current promotion register, alternating with the white officer ranked highest on the register, until the matrix goals are reached for any given year. Under intervenors' plan, any further promotion of blacks beyond the matrix goals would take place only as they naturally occur, according to their standing

among all officers, black or white, on the promotion register.

Both the plaintiff and DeKalb County propose a different interpretation, however. They suggest that the passage requires that the first, eighth, ninth, seventeenth, etc., promotions from the current register be given to black officers, making the currently available promotion go to a black officer.

The parties argue persuasively in favor of both proposed interpretations. Intervenors point out that the "intended" and "natural" meaning of the provision in issue is only to promote out of turn two additional black officers from the ˙current register to the first and eighth available openings. As intervenors note, the consent decree sets as its goal promotion of four black officers to sergeant by August 1981, and that goal has been achieved.* Further, promotion to sergeant of the black officer standing highest on the current register would necessitate promoting him over some fifty-eight non-black officers with higher standing on the register.

DeKalb County responds by pointing out that even with the recent promotions, only five of sixty sergeants (8.3%) are black in contrast with a black population ratio in the community of 27.1%. Moreover, as DeKalb County notes, in order to meet the consent decree goal for promotion to lieutenant, promotion of blacks to sergeant must keep pace. DeKalb County advises the court that its proposed acceleration of promotions of black officers to sergeant beyond the goals in the consent decree is based upon vacancies occurring more rapidly than it had anticipated when the decree was adopted. Under these circumstances, the County argues, the written portion of the decree should control over the guidelines set out in the matrix, and the written provision plainly contemplates a recurring cycle of first, eighth, ninth, seventeenth, etc., the County avers.

The court recognizes that a method of negotiation frequently employed in disputes where the parties begin negotiating from positions that are poles apart involves reaching general agreement on a framework for resolution, but deferring to a later time negotiation on sensitive issues related to implementation. This technique permits the parties to assimilate and accept the concessions they may feel they made in reaching accord before they address subsidiary issues that may require what they perceive to be further sacrifices. At the time this decree was approved, the court recognized that it provided no mechanism for preferential promotion beyond the first year. The court understood that either the parties or the court would be required to resolve that omission in the future. That time has come.

The parties apparently have failed in their attempt to negotiate a solution to this problem. It therefore falls upon the court to propose a fair and workable method to implement the matrix that the parties incorporated in the consent decree. Providing this solution goes well beyond simply interpreting paragraph XVII of the decree, since that provision manifestly only addresses preferential promotion within the first implementation year. To clarify that paragraph, however, it was and is the court's understanding that paragraph XVII required no more than its terms expressly provide: that the first and eighth vacancies be filled by black officers preferentially promoted, not the first, eighth, ninth, seventeenth, etc.

The County has reached the first-year matrix goal of four black sergeants. The court declines to require any further preferential promotion of blacks to sergeant prior to September 1, 1981, since gradual movement toward census parity is a keystone of this settlement.

The first vacancy in each superior officer rank that occurs on or after September 1, 1981 shall be filled by the black officer ranked highest on the then-current promotion register for that rank, provided that the vacancy filled immediately prior to that

---

* All parties seem to agree that Sergeant Allison, promoted prior to entry of the consent decree,

should not be counted in evaluating compliance with the decree's goals.

first vacancy on or after September 1 was filled by a white officer (as it appears it will be). If the vacancy immediately preceding the first vacancy on or after September 1 was filled by a black officer, the first vacancy shall be filled by a white officer. In other words, the race of the officer who fills the last vacancy in each rank in any year will determine the race of the officer who fills the first vacancy in each rank in the succeeding year.

Subsequent vacancies in each rank each year shall be filled alternatively by an officer of the opposite race until the matrix goal for that rank and that year is achieved. After reaching the matrix number in any rank for a given year, no further preferential promotion of blacks shall be made for that rank, although blacks who are reached in their natural order based upon their standing on any register among blacks and whites shall be promoted and such promotion shall not be counted in assessing achievement of the matrix goal. In the event that the matrix goal for a rank in any year is not reached, any shortfall shall be added to the matrix number to be reached in the succeeding year for that rank.

Any black superior officer whose position is vacated through attrition shall be replaced by the black officer highest ranked on the appropriate current register, and such replacement shall not be counted in assessing achievement of the matrix goal for that rank.

In the event that a preferential promotion under the alternating promotion scheme is given to a black officer who is not only the highest ranked black officer on a register but also the highest ranked officer regardless of race, such promotion shall count as a preferential promotion in assessing achievement of the matrix goal for that rank.

The foregoing shall apply throughout the remainder of the court's jurisdiction over this decree, or until further order of the court, and shall apply to promotion to all superior ranks (sergeant through major).

As the matrix clearly evidences, the parties agree that by September 1, 1986, the police department shall reflect at least the percentage of blacks in DeKalb County in all ranks, patrolman through major.

## ON OBJECTIONS TO PROPOSED IMPLEMENTATION OF PREFERENTIAL PROMOTIONS

This action is before the court pursuant to the court's order of July 23, 1981, in which the court set out its proposed implementation of preferential promotions in all ranks through September 1, 1986. The parties were invited to submit in writing their comments or objections within ten days of the date of the order. Only plaintiff has availed itself of this opportunity. Consequently, this order will deal only with plaintiff's proposals and objections.

Plaintiff's first concern is that "strict adherence to the matrix figures calling for preferential promotion will nevertheless result in a shortfall in the number of officers within any given category" because, basically, the total number of officers and higher ranking positions on the police force is on the increase. Plaintiff's Comments and Objections to Court's Proposed Order of July 23rd, 1981 (hereinafter "Brief") at (unnumbered) pp. 1–2. In other words, plaintiff is concerned that if the matrix stays the same and is strictly adhered to while the number of officers and positions increase, the *percentage* of black officers promoted, as opposed to the actual number of blacks promoted, will decrease.

Plaintiff therefore seeks some type of provision in the final order which will assure that the ratio of black officers will remain the same if there is an increase in the force and officer positions. Plaintiff wants the matrix goals to be a *minimum* and not a maximum requirement. Plaintiff proposes that a provision be incorporated into the final order which will provide that the County should "promote that number of Black officers into superior officer ranks as set forth in the matrix goal, or one of every four officers in each superior officer rank, whichever number is greater in any given year." Brief at 2.

The court noted in its proposed order that "gradual movement toward census parity is a keystone of this settlement." Proposed Order at 4. The court finds plaintiff's concern to be eminently reasonable under the circumstances. The final paragraph of the court's proposed order plainly states that "the parties agree that by September 1, 1986, the police department shall reflect *at least* the percentage of blacks in DeKalb County in all ranks, patrolman through major." (Emphasis added.) Clearly, if plaintiff's fear regarding increases in the total number of officers and higher-ranking positions comes true, there will have to be a readjustment of the plan in order to meet the percentage representation requirements. Therefore, the court hereby ORDERS that the matrix goals established in the consent decree are to be augmented if an increase occurs in the number of officers on the force and the positions available on promotion are increased. As the black population of the County is roughly 27% of the overall population, the court ORDERS FURTHER that the number of black officers promoted into superior ranks will be either that number provided for in the matrix *or* one of every four officers promoted to each superior officer rank, whichever is greater. *See Jones v. Milwaukee County,* 441 F.Supp. 455 (E.D.Wis.1977); *Reed v. Lucas,* 11 F.E.P. 153 (E.D.Mich.1975). If the number of black officers to be promoted under this provision exceeds the number provided in the matrix, promotion of these officers will be done according to the same formula provided in the plan for the promotions of those officers promoted under the matrix provisions.

While the court recognizes that this particular contingency was not specifically dealt with prior to now, the court finds that the spirit of the consent agreement is maintained by this added provision. The court finds further that neither the defendants nor the intervenors have objected to plaintiff's proposal, and therefore this addition is amply justified under the circumstances.

Plaintiff's other objection centers around the second full paragraph on page 5 of the proposed order. That paragraph states:

In the event that a preferential promotion under the alternating promotion scheme is given to a black officer who is not only the highest-ranked black officer on a register but also the highest-ranked officer regardless of race, such promotion shall count as a preferential promotion in assessing achievement of the matrix goal for that rank.

Plaintiffs assert that this language appears to contradict the terms of the last paragraph of page 4 of the proposed order, which states in part:

Subsequent vacancies in each rank each year shall be filled alternatively by an officer of the opposite race [until the matrix goal for that rank and that year is achieved. After reaching the matrix number in any rank for a given year, no further preferential promotion of blacks shall be made for that rank], although blacks who are reached in their natural order based upon their standing on any register among blacks and whites shall be promoted and such promotion shall not be counted in assessing achievement of the matrix goal . . . .

Plaintiff proposes that "where a Black Police Officer is ranked highest among all officers available for promotion to a superior rank, that his promotion not be treated as a preferential promotion, nor be counted towards the specific matrix goals."

The court notes first of all that the bracketed portion of the last paragraph on page 4 of the proposed order has been altered by the new provision set out above in this order.

Second, the court finds no contradiction in the two paragraphs. The statement "although blacks who are reached in their natural order based upon their standing on any register among blacks and whites shall be promoted and such promotion shall not be counted in assessing achievement of the matrix goal" refers to those blacks who are reached on the register *after* the matrix goal for that year has been accomplished. In other words, the clause in question refers to black officers who are to be promoted *in*

**46**

*addition to* those promoted under the consent decree plan as they come up in order on the register. Therefore, the court declines to implement the second of plaintiff's proposed provisions.

In sum, the court's proposed order of July 23, 1981, with the one modification set out above in this order, hereby becomes the final order of the court.